UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LARRY RAMIREZ**<br><br>**Plaintiff**<br><br>v.<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of the Social Security**<br>**Administration**<br><br>**Defendant** | § § § § § § § § § § § § § | **Civil No. SA-07-CA-0183-XR** |

**ORDER**

Plaintiff timely filed his objections to the Magistrate Judge's Report and Recommendation affirming the Commissioner's finding that Plaintiff is not disabled. Having reviewed the Report and Recommendation, Plaintiff's objections, the underlying case record, and the applicable law, the Court **AFFIRMS** the Commissioner's decision to deny benefits and **DENIES** Plaintiff's motion for remand.

**I. PROCEDURAL BACKGROUND**

On June 18, 2002, Plaintiff filed an application for Disability Insurance Benefits, alleging he became disabled in 2000. The Plaintiff requested a hearing before an Administrative Law Judge (ALJ) after his application for disability benefits was denied.

On May 28, 2004, the ALJ issued an order granting Plaintiff his requested benefits. However, the ALJ only granted Plaintiff disability benefits for the time period between March 1, 2001, and

-Page 1

December 10, 2002. The ALJ found that the Plaintiff was not disabled from the alleged date of disability of June 14, 2000, through February 28, 2002, and from December 11, 2002, to present, because he retained a residual functional capacity during these periods which allowed him to perform his past relevant work as a parts assembler.

Plaintiff sought review of the ALJ's decision from the Appeals Council claiming the decision was not supported by substantial evidence and was based on errors of law. The council dismissed Plaintiff's claims and found that there was no basis to review the ALJ's decision. Thus, on January 12, 2007, the ALJ's determination became the final decision of the Commissioner. Plaintiff properly appealed that decision to this Court, which referred the matter to the Magistrate Judge for a Report and Recommendation (R&R). Having found the R&R adverse to his position, Plaintiff filed objections with this Court, which are addressed below.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision to deny disability benefits is limited to a determination of whether (1) the decision is supported by the evidence, and (2) the Commissioner applied the proper legal standards in evaluating the evidence.[1] If the Commissioner's findings are supported by substantial evidence, the determination must be affirmed.[2] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance.[3] A rejection of the Commissioner's finding is appropriate only if no credible choices or contrary medical evidence

---

[1] *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[2] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

[3] *Nugent v. Astrue,* 2008 U.S. App. Lexis 10611 (5th Cir. May 16, 2008).

exists.[4]

The Court does not re-weigh the evidence, try the issues *de novo*, or substitute its judgement for the Commissioner's.[5] Any conflict in the evidence is for the Commissioner to resolve.[6] In determining whether substantial evidence supports the Commissioner's determination, the following four elements of proof are weighed: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[7]

### III.  LEGAL FRAMEWORK OF THE SOCIAL SECURITY ACT

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[8] A person shall be determined to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[9]

To determine if a claimant qualifies as disabled under the Social Security Act, the

---

[4] *Abshire*, 848 F.2d at 640.

[5] *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[6] *Id*.

[7] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[8] 42 U.S.C. § 423 (d)(1)(A).

[9] 42 U.S.C. § 423 (d)(2)(A).

Commissioner makes the following sequential inquiry: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have a severe impairment; (3) does the impairment meet or equal an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) does the impairment prevent the claimant from doing past relevant work; and (5) does the impairment prevent the claimant from doing any other work.[10]  The claimant bears the burden of proving the first four requirements.  If the claimant establishes these elements, the burden then shifts to the Commissioner to prove that the impairment does not prevent the claimant from performing other jobs.[11]  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work.[12]

## IV.  PLAINTIFF'S OBJECTIONS

Plaintiff makes two objections to the Magistrate's R&R claiming: (1) the ALJ's residual functional capacity (RFC) finding was not supported by substantial evidence; and (2) the ALJ erred in finding that Plaintiff retained the ability to perform his past relevant work as an assembler.[13]  Each objection is addressed below.

**A.  ALJ's Residual Functional Capacity Finding is Not Supported by Substantial Evidence**

To support the conclusion that the ALJ did not base his decision on substantial evidence, Plaintiff argues that he gave controlling weight to the medical opinions of non-treating physicians. Plaintiff argues that because of this error, the ALJ improperly found the Plaintiff to have a residual

---

[10] 20 C.F.R. §§ 404.1520, 416.920.

[11] *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

[12] *Id*.

[13] Docket No. 35.

functional capacity.

In making his determination, the ALJ relied on the medical opinions of both treating and non-treating physicians, but he did not give substantially greater weight to the opinions of the medical expert. According to 20 C.F.R. §404.1527(b) and 416.927(b), all medical opinions are to be considered in determining a claimant's disability status.[14] However, the ALJ should generally give controlling weight to the medical opinions of the claimant's treating physicians.[15] If the ALJ fails to do this, he must consider the following factors in determining how much weight that opinion should be given: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factor brought to the Social Security Administration's attention, or of which the SSA is aware, which tends to support or contradict the opinion.[16]

In the present case, the ALJ "accorded substantial weight to the opinions of Dr. Weilepp, [a non-treating physician] . . . Dr. Weilepp's opinions were consistent with those of the state agency medical consultants and the opinion of Dr. Diment, the claimant's treating physician, that Plaintiff was able to return to a range of light work as of December 11, 2002."[17] The decision reflects a finding based on reports from the Plaintiff's treating physicians that were supported by the medical expert. The similarity among the findings concerning the Plaintiff's condition as of December 2002, suggests that the ALJ did not give substantially more weight to the medical opinions of Dr. Weilepp.

---

[14]*Claiburne v. Astrue*, 255 Fed. Appx. 854, 857 (5th Cir. 2007).

[15] 20 C.F.R 404.1527.

[16] *See* 20 C.F.R. §404.1527(d).

[17] T.R. 18.

Instead, the evidence suggests that the ALJ took into account all of the medical opinions in formulating his decision.

Three different doctors agreed that the Plaintiff retained the capacity to perform sustained work activity from December 2002.[18] These doctors included the Plaintiff's treating physicians, Dr. Diment and Dr. Purwal, Dr. Lazzara, a consulting physician, and the medical expert. Dr. Diment noted that on December 11, 2002, the Plaintiff "reached the limit of improvement with his left shoulder."[19] As a result, Dr. Diment released the Plaintiff back to work with restrictions specifying lifting of ten pounds below the shoulder with the left upper extremity and five pounds above shoulder level.[20] This suggests, as Dr. Weilepp found, that the Plaintiff was capable of performing sedentary work.[21] Dr. Weilepp determined that the Plaintiff had been capable of a restricted range of sedentary to light work since [Dr. Diment] released [the Plaintiff] back to work on December 11, 2002. Dr. Diment had been a treating physician to the Plaintiff since December 10, 2001.[22]

Consistent with these findings is an opinion made by Dr. Purwal on April 14, 2003. He

---

[18] Docket No. 25 at 9. Defendant suggests that there were four doctors who agreed that the Plaintiff could perform work activity. However, one of the physicians he is counting is Dr. Lazzara, a consulting physician. Dr. Lazzara examined the Plaintiff in September 2002 to determine his upper and lower dexterity levels. There is no indication from the record that Dr. Lazzara recommended that the Plaintiff could return to work. Instead, his findings were used by the ALJ to determine if the Plaintiff could sustain work activity.

[19] T.R. 15.

[20] *Id*.

[21] According to Social Security regulations, sedentary work involves lifting of no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. See 20 C.F.R. 404.1567.

[22] T.R. 139.

determined that the Plaintiff could return to work with restrictions specifying no reaching or lifting above the level of his shoulder while using his left arm.[23] Although Dr. Purwal determined that the Plaintiff could return to work in April 2003, there is no indication from Dr. Purwal that he would not have released the Plaintiff back to work as early as December 2002.[24] Additionally, Dr. Purwal did not examine the patient until April 2003, thus there is a possibility that had the Plaintiff visited him earlier, he would have been released back to work at or near the time of the release by Dr. Diment in December 2002. In addition, Dr. Purwal released the Plaintiff with the same restrictions as prescribed by Dr. Diment, "the Plaintiff [could] lift or maneuver up to ten pounds with his left arm as long as the lifting [was] not above his waist level.[25] Dr. Purwal, however, expected these restrictions to be permanent.[26]

Four physicians examined the Plaintiff from 2002 to April 2003.[27] Among them were the Plaintiff's treating physicians and two consulting doctors, Dr. Lazzara and Dr. Maxwell. As described in the above paragraphs, both treating physicians determined that the Plaintiff could return to work. Dr. Lazzara examined the Plaintiff's dexterity levels but did not make a recommendation as to whether the Plaintiff could return to work.[28]

According to *Pearson v. Barnhart*, an ALJ may rely on the testimony of a medical adviser

---

[23] T.R. 140-141.

[24] *See* T.R. 138-141.

[25] T.R. 16.

[26] *Id*.

[27] *See* T.R. 111-141.

[28] *See* footnote 19; *See also* T.R. 116.

to evaluate the nature and extent of a claimant's impairments.[29] Accordingly, the ALJ used the medical expert to help determine what the dexterity levels meant and if they indicated that the Plaintiff could perform sustained work activity.[30] After examining Dr. Lazzara's medical report, Dr. Weilepp found that "the Plaintiff could stand and walk a total of six hours in a work day from either 60-90 minutes without a break, or from 60-120 minutes."[31] The record suggests that this was the only dexterity level test conducted on the claimant. The ALJ used these findings to determine that the Plaintiff could "stand or walk for 2 hours of an 8-hour work day."[32] Dr. Maxwell also made no recommendation as to whether the Plaintiff was capable of sustained work activity, nor did he dispute the release proscribed by Dr. Diment. Instead, Dr. Maxwell suggested physical therapy to the Plaintiff to treat his shoulder pain.[33]

Accordingly, following the medical opinions of the Plaintiff's treating physicians, there was substantial evidence to allow the ALJ to determine that the Plaintiff retained a residual functional capacity beginning December 11, 2002.

**B. ALJ Erred in Finding that the Plaintiff Retained the Ability to Perform His Past Relevant Work as an Assembler**

The ALJ found that the Plaintiff had a residual functional capacity for sedentary work and decided that he could therefore perform his past employment as a plumbing fixture assembler.

---

[29] *Pearson v. Barnhart*, 2005 U.S. Dist. LEXIS 11354 (E.D. Tex. 2005).

[30] T.R. 253-255.

[31] Docket No. 25 at 9.

[32] T.R. 21.

[33] T.R. 140.

This job permitted the Plaintiff "to sit all day and did not require lifting and carrying of more than five pounds."[34]

Plaintiff contends that the ALJ did not conduct a meaningful review of the demands of his past relevant work as an assembler. To determine whether the Plaintiff can return to prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work.[35] The ALJ must make clear factual findings on [this] issue... and may not rely on generic classifications of previous jobs.[36]

The ALJ used the Plaintiff's testimony to find that he could perform his past work as an assembler. The Plaintiff testified that the job did not require him to "lift objects . . . and that he mainly sat while performing the work."[37] The claimant bears the burden of proof in showing that his impairment prevents him from doing past relevant work.[38] During the hearing the ALJ posed a hypothetical to the vocational expert to determine if the Plaintiff could perform his prior work as an assembler. Plaintiff notes that "had all the limitations supported by the record, including Plaintiff's need for a sit/stand option, and his inability to perform highly repetitive work with his dominant left arm and hand been included in the hypothetical question, the vocational expert would likely have testified that the Plaintiff could no longer perform his past work as a plumbing

---

[34] T.R.20.

[35] *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) citing 20 C.F.R. §404.1520(e) (1994)).

[36] *Id*.

[37] Docket No. 25 at 13 citing to T.R. 234-235.

[38] See *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

assembler."[39]

In the Fifth Circuit, the test for determining when a defective hypothetical question posed to a vocational expert by the ALJ will produce reversible error is the following:

> Unless the hypothetical can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ,* and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of disability will not stand.[40]

Following this test, there is no reversible error that would grant relief to the Plaintiff. First, the limitations argued by the Plaintiff were not disabilities recognized by the ALJ. The ALJ never found that the Plaintiff could only perform sedentary work that included a sit/stand option.[41] Nor did he find that the Plaintiff could only perform moderate repetitive work with his left hand even though the medical opinion of Dr. Diment supported this conclusion.[42]

Second, the Plaintiff had the opportunity to correct the hypothetical when it was offered by the ALJ to the vocational expert but failed to do so. Plaintiff cites to *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir. 2001), which held that a party's failure to point out the problems in a defective hypothetical does not automatically salvage the hypothetical as a proper basis for a determination of non-disability.[43] However, in *Boyd*, the court came to this conclusion because "major evidence concerning Boyd's mental impairments [were] not available to either the ALJ or to Boyd until

---

[39] Docket No. 35 at 8-9.

[40] *Landry v. Astrue*, 2007 U.S. Dist. Lexis 69533 (W.D. Tex. 2007).

[41] *See* T.R. 20-21.

[42] *Id*. *See also* Docket No. 25 at 6.

[43] Docket No. 35 at 8.

after the hearing was completed. Thus, Boyd did not have a 'fair' opportunity at the hearing to challenge the assumptions."[44] Plaintiff did however have the information being alleged as error during the hearing, but he failed to make the proper objections. Dr. Diment's observations were in the record.[45] Additionally, when the ALJ was examining Dr. Weilepp to determine the Plaintiff's ability to work during a six-hour day, Plaintiff never made any objections to include that he may need to "sit or change positions for 20 to 30 minutes after working for 60-90 minutes."[46] Plaintiff also never objected or indicated to the court during the hearing that the assembler job required highly repetitive work.[47] Had he have done so, the ALJ may have taken Dr. Diment's specifications into greater consideration.

Accordingly, there was substantial evidence to support the ALJ's finding that the Plaintiff did retain the ability to perform his past work as an assembler.

### D.  Conclusion

In the Fifth Circuit, an ALJ is under no duty to enumerate all evidence in support of, or all evidence contrary to, her decision.[48]  Because the ALJ's decision is based upon substantial evidence and was derived according to correct legal principles, this Court is not at liberty to substitute its own judgment regarding the weight of and conflicts in the evidence.[49]

---

[44] *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir. 2001).

[45] *See* T.R. 127 and T.R. 255.

[46] T.R. 255.

[47] T.R. 264-265.

[48] *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 (5th Cir. 2000) (noting that the Fifth Circuit has expressly rejected the Third Circuit's requirement of strict disclosure of evidence used to make certain Social Security benefits decisions).

[49] *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).

Accordingly, the Commissioner's decision is **AFFIRMED**; Plaintiff's motion for remand[50] is **DENIED**. The Clerk is instructed to enter a Judgment for Defendant and against Plaintiff, each side to bear its own costs.

It is so ORDERED.

SIGNED this 29th day of May, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[50] Docket No. 9 at 15.